# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY S. KOCH,<br><br>        Plaintiff,<br><br>    v.<br><br>DR. JEFFERY NEUBARTH, et al.,<br><br>        Defendants.<br>_____/ | CASE NO. 1:09-cv-00116-SMS PC<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, AND REQUIRING DEFENDANTS TO FILE AN ANSWER WITHIN THIRTY DAYS<br><br>(Doc. 18) |

**Order on Defendants' Motion to Dismiss for Failure to State a Claim**

Plaintiff Rodney S. Koch, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 20, 2009. This action is proceeding against Defendants Neubarth, Hasadsri, Loadholt, and McGuinness for acting with deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment, and against Defendant Hasadsri for retaliation in violation of the First Amendment.

On July 17, 2009, Defendants filed a motion to dismiss Plaintiff's Eighth Amendment claims for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Plaintiff filed an opposition on September 14, 2009, and Defendants filed a reply on October 9, 2009.

**I.   Legal Standard**

"The focus of any Rule 12(b)(6) dismissal . . . is the complaint," Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), which must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ," Fed. R. Civ. P. 8(a)(2).

1

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Iqbal at 1949 (citing Twombly at 555), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

**II.     Discussion**

    **A.     Plaintiff's Claims**

Plaintiff alleges that as a result of a near fatal gunshot wound and subsequent surgery, he sustained severe tissue, muscle, and nerve damage, which causes muscle spasms and varying levels of pain. Further, Plaintiff has chronic pain syndrome and neuropathy, which require medication.

In 2006, Plaintiff was seen numerous times by physicians, including Defendants Neubarth and Hasadsri. Initially, "Salsalese," Robaxin, and Tylenol #3 were prescribed for pain, and methocarbomal was prescribed for muscle spasms. (Doc. 1, Comp., court record p. 2, lns. 14-23.) On September 20, 2006, non-party Dr. Zohr increased the Tylenol #3 dosage to three times a day due to Plaintiff's pain level, and on October 28, 2006, a nurse prescribed Robaxin. However, on November 2, 2006, Hasadsri discontinued the Robaxin and lowered Plaintiff's Tylenol #3 dosage despite being informed by Plaintiff that his muscle spasms and pain were increasingly severe.

On January 11, 2007, Plaintiff informed Hasadsri that his pain and muscle spasms were increasing. Hasadsri discontinued the methocarbomal and again prescribed Tylenol #3 although Plaintiff complained that he was in constant pain and the treatment was not working.

On March 28, 2007, Neubarth ordered medical staff to begin decreasing Plaintiff's medication over a three-week period until Plaintiff was on no medication except for Tylenol. Plaintiff contends that Neubarth was aware of Plaintiff's medical condition and need for pain management medication but terminated Plaintiff's treatment without examining or consulting with

Plaintiff. Plaintiff alleges he was left in severe pain but was unable to see a different doctor because Hasadsri and Neubarth were the yard doctors.

On May 15, 2007, Plaintiff was interviewed by Neubarth over Plaintiff's inmate appeal. Neubarth's assessment was that Plaintiff suffered from chronic pain but Neubarth refused to prescribe any type of pain medication despite Plaintiff's pleas for pain treatment, prescribing instead chlorzoxazone and gabapentin.

Plaintiff was taken to the Acute Care Hospital on May 21, 2007, where he was diagnosed with involuntary muscle spasms in the spinal area of T3 through T5 by non-party Dr. Greenough. Dr. Greenough prescribed Lyrica, Baclofen, and Vicodin for pain, but Plaintiff received Tylenol #3, eight per day, instead.

On June 18, 2007, Plaintiff was again seen by Hasadsri, who refused to address Plaintiff's pain issue and decreased the Tylenol #3 from eight tablets to three tablets, although Plaintiff complained the Tylenol #3 was not working.

On July 18, 2007, Plaintiff was seen at the Acute Care Hospital by non-party Dr. Moon, who diagnosed Plaintiff with neuropathy and completed a non-formulary request for Lyrica, a stronger, faster acting drug. Plaintiff alleges that Dr. Moon stated Plaintiff would need to be on that therapy for life.

Plaintiff was interviewed by Hasadsri on August 3, 2007, over an inmate appeal. Plaintiff did not want Hasadsri to handle his appeal, and Hasadsri became hostile as a result, telling Plaintiff that he would stop all medication if Plaintiff did not stop filing appeals against him. Hasadsri discontinued the Lyrica and prescribed chlorzoxazone.[1]

Plaintiff was seen by Defendant Loadholt, a family nurse practitioner, on August 22, 2007. Loadholt told Plaintiff that all inmates were drug addicts who filed appeals to get drugs, and she decreased his pain medication despite being told by him that his pain was severe. Loadholt reordered Tylenol #3 for Plaintiff on September 11, 2007. When Loadholt again saw Plaintiff on November

///

---

[1] Defendants are not moving for dismissal of Plaintiff's First Amendment retaliation claim against Hasadsri.

3

1, 2007, she accused him of being a drug addict, refused to address his complaint of severe pain, and reordered the Tylenol #3 despite being informed by Plaintiff that it was not relieving his pain.

On December 19, 2007, Plaintiff was again seen by Hasadsri. Plaintiff told Hasadsri that he was in severe pain and Tylenol #3 was not stopping the pain. Plaintiff was told all he was getting was Tylenol #3 and more Neurontin. Hasadsri refused to refer Plaintiff to a pain specialist, and he put Plaintiff back on Tylenol #3, eight times a day.

On March 3, 2008, Plaintiff was seen by Loadholt. He complained the current medications were not stopping the pain or spasms, but Loadholt ignored him and only increased the Neurontin.

Finally, Plaintiff filed an inmate appeal against Loadholt on April 23, 2008, and was seen by Defendant McGuinness regarding the appeal on July 1, 2008. Plaintiff alleges that McGuinness reviewed his medical file but refused to address his medical condition, and refused to conduct an inquiry into Loadholt's conduct. McGuinness informed Plaintiff that he had to deal with the yard doctors because McGuinness would not override their decisions. Plaintiff was advised to quit filing complaints and learn to get along with the doctors or his treatment would get a lot worse.

### B. Eighth Amendment Standard for Medical Care Claims

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).

The existence of chronic or substantial pain is an indicia of a serious medical need, as distinguished from the routine discomfort that results from incarceration and which does not

constitute a serious medical need.  Doty v. County of Lassen, 37 F.3d 540, 546 n.3 (9th Cir. 1994) (citing McGuckin v. Smith, 974 F.2d 1050, 1059-1060 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000).  Further, a *complete* denial of medical care is not required to show deliberate indifference.  Lopez, 203 F.3d at 1132 (emphasis added).  "The Eighth Amendment requires that prison officials provide a system of ready access to adequate medical care." Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  "[M]edical staff must be competent to examine prisoners and diagnose illnesses," and must either "be able to treat medical problems or to refer prisoners to others who can." Id.

### C. Defendants Neubarth, Hasadsri, and Loadholt

Defendants correctly argue that a mere disagreement with physicians' treatment decisions will not support a claim.  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  Likewise, a disagreement between physicians over the course of treatment will not support a claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  However, at the pleading stage it is often not possible for the Court to find that the claims in fact arise from the mere disagreement with treatment decisions rather than from a failure to provide proper or adequate treatment that meets the constitutional minimum.

Chronic pain management is a notoriously difficult and controversial area of medicine.  The evidence may end up showing that the course of treatment chosen by Defendants Neubarth, Hasadsri, and Loadholt was medically sound and acceptable given the chronic nature of Plaintiff's medical issues.  Plaintiff does not have a constitutional entitlement to dictate the terms of his care, and there may in fact be no medically acceptable or advisable course of treatment that will render Plaintiff free of pain.  However, it is possible that the course of treatment chosen by Defendants is so conservative and minimal that it runs afoul of the Constitution by leaving Plaintiff to suffer needless pain.  Construed in the light most favorable to Plaintiff, Moss at 967, Plaintiff 's allegations that Defendants reduced and/or discontinued his pain medications, and failed to prescribe medications effective in controlling his pain and spasms despite being placed on notice that he was still in severe

///

pain preclude resolution of these issues at the pleading stage. Defendants' motion to dismiss for failure to state a claim shall be denied.

**D.     Defendant McGuinness**

Defendants argue that because Plaintiff fails to state a claim against the other defendants, he cannot pursue a claim against Defendant McGuinness for knowing of the constitutional violations, but failing to prevent them. Further, Defendants argue that McGuinness cannot be held liable based on his role in resolving Plaintiff's appeal because there is no right to a grievance system and actions in reviewing a grievance provide no basis for the imposition of liability.

The Court has found that Plaintiff states a claim against Neubarth, Hasadsri, and Loadholt. Therefore, the Court rejects Defendants' argument that there is no underlying constitutional violation upon which to base a claim against McGuinness.

Turning to Plaintiff's allegations, McGuinness is, or was at the relevant time, the Chief Medical Officer at CPS-Corcoran. Under section 1983, Plaintiff must prove that McGuinness personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There is no *respondeat superior* liability under section 1983, and therefore, McGuinness is only liable for his own misconduct. Iqbal at 1948-49.

However, prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates. Jett at 1098 (prison administrators are liable if they knowingly fail to respond to a request for help, and the plaintiff raised a triable issue of fact over whether the administrator-defendants received his letters placing them on notice over lack of medical care). A supervisor may be held liable for the constitutional violations of his or her subordinates if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); also Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Generally, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007). Here, however, the issue is whether McGuinness, the prison's top medical administrator, was placed on notice that

6

Loadholt, a subordinate, was acting with deliberate indifference to Plaintiff's medical needs but failed to take any corrective action. Plaintiff's claim does not arise from McGuinness's mere consideration of or ruling on Plaintiff's appeal.

In the appeal, Plaintiff complained that Loadhold was acting with deliberate indifference to his medical needs. (Doc. 1-2, Comp., Ex. C, court record p. 27-29.) Plaintiff stated, in part, that despite medical records clearly showing that he suffers from chronic pain and neuropathy, and that he requires pain medication, Loadholt "decide[d]" he had no medical problem and did not need the medications he was taking. (Id., court record p. 28.) Plaintiff complained that Loadholt was abusing her position by discontinuing his treatment and interfering with his medication.

The Court finds that the appeal was sufficient to place McGuinness on notice that Plaintiff was complaining of Loadholt's interference with and/or denial of medical treatment, in disregard of Plaintiff's medical needs. As the Chief Medical Officer, McGuinness cannot turn a blind eye to a claim that a subordinate is denying an inmate medical care simply because the claim is made during an interview on an inmate appeal rather than, for example, in a letter, during a conversation on the yard, or in a medical exam room. Jett at 1098. Accordingly, the Court finds that Plaintiff's allegations in paragraph 31 of the complaint are sufficient to state a claim against McGuinness. Taylor, 880 F.2d at 1045.

However, Plaintiff may not proceed against McGuinness for each and every previously described action taken by Neubarth, Hasadsri, and Loadholt. In paragraph 32, Plaintiff alleges that McGuinness had a duty to ensure that Defendants provided him with proper care, and that McGuinness reviewed and approved each inmate appeal response given to Plaintiff. It is this sort of vague, general assertion of liability that is not permitted under section 1983. McGuinness's involvement, in general, as an appeals reviewer and his position as the prison's top medical administrator, in general, do not provide a basis for the imposition of liability. The mere possibility of misconduct simply does not support a claim under section 1983. Iqbal at 1950. Only if McGuinness was placed on notice of the constitutional violations but then failed to intervene may

///

///

1  Plaintiff properly proceed against him. Jett at 1098; Taylor at 1045. The only allegations specific
2  enough to support such a claim are the allegations set forth in paragraph 31 regarding Loadholt.[2]

### III. Conclusion and Order

For the reasons set forth herein, Defendants' motion to dismiss Plaintiff's Eighth Amendment claims for failure to state a claim, filed July 17, 2009, is HEREBY DENIED. Defendants SHALL file an answer to Plaintiff's complaint within **thirty (30) days** from the date of service of this order.

IT IS SO ORDERED.

**Dated:** November 17, 2009          /s/ Sandra M. Snyder
                                      UNITED STATES MAGISTRATE JUDGE

---

[2] Although Plaintiff's complaint is accompanied by exhibits, they are not properly and specifically incorporated by reference. Fed. R. Civ. P. 10(c). It is not the duty of the Court to wade through the exhibits and piece together Plaintiff's claims for him. Plaintiff is required to set forth the facts that support each of his legal claims, and the allegations in paragraph 32 fall short of supporting a claim.